Hohman et ux. *v.* Borough of North Braddock, Appellant.

Argued April 29, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Drew, JJ.

*Joseph F. Mayhuff,* for appellant.

*Frederic W. Miller,* and with him *John K. Benn,* for appellee.

OPINION BY GAWTHROP, J., July 8, 1931:

This is an action of trespass to recover damages resulting to plaintiffs' garage from the sinking of the ground on which it stood, this, it was alleged, being caused by the negligence of the defendant borough in the care of Cherry Way, the street on which the garage fronted, and a sewer which ran along and under the street. The garage was built of concrete in the year 1924 and was in good condition prior to the sinking of the ground which resulted in the damages claimed. A tile sewer thirty inches in diameter and belonging to the borough ran under and along Cherry Way, an unpaved street, at a depth of about forty feet from the surface. When this sewer was constructed in 1901, it was laid along the bottom of a ravine which was later filled in to the grade of the present surface of the street. Much miscellaneous material went into the fill of the street, as well as into the fill of adjoining land on which the garage was erected. On October 17, 1927, a motor truck was driven along Cherry Way and immediately after passing plaintiffs' property the earth in the street sank, leaving an opening

of a bee-hive shape six or eight feet in diameter and about eight feet deep. This cavity was located about ten feet from the garage. H. E. Emeigh, who was at that time the street commissioner of the borough, was notified of this condition in the afternoon of the day of the subsidence. He inspected it at once and immediately had from twelve to fifteen truck loads of slate, earth and stone dumped into the opening. The next day a very heavy rain fell and the material which had been placed in the cavity began to sink. This was followed by a gradual sinkage in plaintiffs' land near and under the garage, which caused the walls thereof to crack and become weak. An inspection of the sewer disclosed that it had been crushed immediately beneath the cavity in the street and the overlying earth and stones had fallen into it, thus obstructing the flow through it of sewage and surface drainage arising from the rainfall. The trial resulted in a verdict for plaintiffs, and defendant has appealed.

The errors assigned are: (1) the refusal of the court below to affirm defendant's point for binding instructions and to enter judgment non obstante veredicto; and (2) the refusal to strike out certain testimony introduced by plaintiffs on the question of damages.

(1) In support of the contention that defendant was entitled to binding instructions and to judgment n. o. v., two propositions are presented. The first is that there was no proper averment of the negligence as to which plaintiffs introduced evidence and of which the jury found defendant guilty. As we understand this contention it is that plaintiffs' averments in their amended statement of claim limited them to proving that the borough permitted the sewer to fall into a state of disrepair and to remain in that condition *prior to the 17th of October 1927*, and that there is no evidence of a breaking of the sewer prior to or on that

date. We find no merit in this contention. The amendment to the original statement of claim was not a substitute for the original, but consisted merely of additional allegations tending to make the allegations of the original statement more specific. There was no abandonment by plaintiffs of any of the allegations in the original statement, which averred that defendant, upon notice of the hole in the street, "immediately filled up the said cavity with great quantities of earth" and, in filling up the cavity, "negligently and unlawfully obstructed the flow of sewage through the aforesaid sewer, with the result that the sewage percolated, and still percolates in large quantities, through the plaintiffs' said land and under the surface thereof,......with the result that the buildings erected thereon......have become cracked, broken and thrown out of position." If the defendant thus obstructed the flow through the sewer, it was entirely proper that the plaintiffs be permitted to show that such obstruction was due to the crushing of the sewer. That was a matter of proof and all the details of plaintiffs' evidence of the manner of filling the cavity need not be pleaded. We agree with the learned judge of the court below that there was ample notice to defendant that one of plaintiffs' complaints was negligence in filling the opening in the street and obstructing the flow through the sewer.

The other ground on which it is contended that defendant was entitled to binding instructions is that there was insufficient evidence of negligence for submission to the jury. After a thorough examination of the evidence and consideration of the briefs and oral arguments, we are of one mind that this contention is untenable. When the authorities of the borough learned of the dangerous condition of the street resulting from the sinking of a part of the surface thereof, it became their duty to repair that injury in order

to protect the public. They undertook to perform that duty. The question is whether the evidence supports a finding that they were negligent either in the manner of its performance or in failing to accomplish it, and that this negligence was the proximate cause of the injuries to plaintiffs' property. There was no doubt as to the nature of the soil under the street and adjacent to it. The borough authorities knew that it was filled-in ground and the character of the fill. They saw the cavity in the street. They knew of the location of the sewer beneath the street. The street commissioner testified that he made no investigation of the cause of the sinking of the ground and did not know whether or not the sewer was broken at the time of the dumping of fifteen tons of earth and stone into the cavity. It was not until the morning of October 19th that the thought occurred to the street commissioner that something might be wrong with the sewer. He then caused an inspection of the sewer to be made and found that it was crushed. There is little doubt that the break in the sewer and the obstruction thereof was the cause of the damage resulting to plaintiffs' property. A witness testified that the top part of the sewer just under the cavity in the street was "crushed down." The street commissioner testified that he supposed when he saw the hole in the street that it had been caused by the collapse of some unsubstantial filling. It was for the jury to determine whether, under all the circumstances known to this borough employee, he ought not to have suspected that there was a break in the sewer, and whether he was negligent in filling up the hole without undertaking to investigate that matter. There was testimony by a witness for defendant that on the afternoon of October 17th before the work of filling up the hole was begun, he went down into the sewer by way of a manhole and found that the sewer was not broken

and that water was running through it. This witness
went into the sewer by means of a rope, one end of
which was at a manhole. There was some evidence to
the effect that the length of this rope would not per-
mit the witness to reach the point of the sewer be-
neath the cavity in the street. He testified that "when
I got too deep I just go around with my hand. I
couldn't do very much, the water was going through."
At any rate this testimony came from defendant's
witness and did not bind the plaintiffs. Its credibility
was for the jury. But, even if the evidence of this
witness be taken as verity, it does not follow that the
jury was required to relieve defendant of negligence.
If the sewer was in good order at the time the ma-
terials were dumped into the hole in the street, it was
out of order soon afterwards. Defendant endeavored
to convince the jury that the break in the sewer was
caused by an extraordinary rainfall beginning Oc-
tober 17th. That tribunal did not adopt that view of
the case and evidently found either that the sewer was
broken before the hole in the street was filled in, or
that the filling thereof caused it to break, and that a
lack of proper care on the part of defendant in hand-
ling the situation which confronted it after the sur-
face of the street fell caused the damage to plaintiffs'
property. We cannot hold that the evidence does not
support such a finding.

(2) Appellant's complaint of the refusal of the
trial judge to strike out the testimony of certain wit-
nesses requires but brief discussion. This action of
the court was not assigned as a reason for a new trial
and, therefore, the court below did not have occasion
to consider the question. We might well disregard it
for that reason. The gravamen of the complaint of
this testimony is that it referred to the cost of what
amounted to a substantial reconstruction of the garage,
and that plaintiffs' damages were limited to the cost

of repairing the damage and restoring the property to its former condition, unless such costs were equal or exceed the value of the building, in which case the value of the building would be the basis of the damages. This was the measure of damages which the court instructed the jury to apply. The answer to this complaint is that plaintiffs testified that the restoration of the garage to its former condition required a substantial rebuilding thereof. Therefore, the opinion of expert witnesses as to what that cost would be was admissible. The estimates of defendant's witnesses of the cost of repairs varied from $200 to $400, while the estimates of plaintiffs' witnesses were from $2,421 to $2,738. The jury rendered a verdict for $1,386, which is more than $1,000 less than the lowest estimate of plaintiffs' witnesses. It would have been error to strike out the testimony which is the subject of this assignment.

All of the assignments of error are overruled, and the judgment is affirmed.